IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NADEZDA G.,<br><br>                Claimant,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>                Respondent. | No. 21 C 3268<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Nadezda G.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance benefits. For the reasons set forth below, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 13] is granted, and the Commissioner's Motion for Summary Judgment [ECF. No 20] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## BACKGROUND

On January 19, 2019, Claimant filed an application for disability insurance benefits, which was denied initially, on reconsideration, and after a hearing. (R.17-26). The Appeals Council declined review (R.1-6), leaving the ALJ's decision as the final decision of the Commissioner which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## DISCUSSION

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's

impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since September 15, 2018, the alleged onset date of her disability. (R.19). At step two, the ALJ found that Claimant has the severe impairment of major depressive disorder. (*Id.*) At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R.20). At step four, the ALJ found that Claimant is unable to perform any past relevant work but has the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations. (R.21-24). At step five, the ALJ found that jobs exist in significant numbers in the national economy that Claimant can perform, and thus she is not disabled. (R.25-26).

Claimant asserts five arguments challenging the ALJ's decision, including: (1) the ALJ did not sufficiently support the paragraph B findings; (2) the ALJ relied upon improper inferences to suggest that Claimant was exaggerating her symptoms and limitations; (3) the ALJ's analysis the medical opinion of Claimant's treating physician is flawed; (4) the ALJ's RFC assessment does not accommodate all of Claimant's limitations; and (5) the ALJ's decision is constitutionally defective. The Court begins with Claimant's argument challenging the ALJ's analysis of the medical

3

opinion of Dr. Victor Nutenko, Claimant's treating psychiatrist. Claimant's Brief [ECF No. 13], at 11-12.

The record shows that Claimant received therapeutic treatment from Dr. Nutenko monthly for over two years to address symptoms of "depression, anxiety social withdrawal, anhedonia, and problems with completing activities of daily living." (R.23-24). Dr. Nutenko also prescribed and modified psychiatric medications to help Claimant manage her symptoms. (R.24). Dr. Nutenko provided a mental functional capacity assessment of Claimant in January 2020. (R.24). In that assessment, Dr. Nutenko opined Claimant "was limited in understanding and memory such that it precluded performance between 10-15% of a workday; she was limited in concentration and pace such that it precluded performance between 10-15% of a workday; and she was limited in interaction and adaption such that it precluded performance between 10-15% of a workday." (R.24). Dr. Nutenko further opined that Claimant "would be off-task more than 30% of a workday, would miss more than six days of work per month, and would have 20-40% efficiency during the workday." (R.24).

Because Claimant's application was filed on January 19, 2019, the ALJ correctly applied the updated regulations for evaluating medical opinions for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the most important factors in evaluating

4

any doctor's opinion are supportability and consistency. *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); 20 C.F.R. § 404.1520c(c)(2). Other factors to be considered include the doctor's relationship with the claimant, specialization, and any other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a) and (c).

In his evaluation, the ALJ found Dr. Nutenko's opinion unpersuasive because "it is mainly inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living." (R.24). The ALJ further concluded that "the extent of limitations … is inconsistent with the claimant's treatment history and clinical examination findings," and "[s]uch inconsistencies suggest that Dr. Nutenko relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported." (R.24).

The Court finds that the ALJ's evaluation of Dr. Nutenko's opinion is deficient and lacks sufficient explanation. Although the ALJ purportedly focused on the supportability and consistency factors, his explanation is largely conclusory and does not provide the requisite logical bridge. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir.2008); *McKinzey v. Astrue,* 641 F.3d 884, 891 (7th Cir.2011). The ALJ says that Dr. Nutenko's opinion is inconsistent with Claimant's treatment history and clinical examination findings, but the ALJ does not explain how it is inconsistent. The ALJ generally discussed Claimant's medical history and treatment record but does not

5

point to or discuss any specific records he relied upon in concluding Dr. Nutenko's opinion is inconsistent with Claimant's treatment history and clinical findings, and the Court will not speculate about what the ALJ had in mind. The ALJ's conclusory statements are not enough to build the requisite logical bridge from the evidence to his conclusion.

In addition, the Court is puzzled why the ALJ did not discuss the other regulatory factors—specialization and the doctor's relationship with the patient. Dr. Nutenko is a mental health care specialist who had an over two-year relationship treating Claimant and helping her manage her mental health. In the Court's view, these factors have some relevance in the evaluation of Dr. Nutenko's opinions in this case, but the Court does not know how, or even if, the ALJ evaluated these factors. It is relevant to the Court to know how the ALJ evaluated these factors and without a more fulsome explanation, it is impossible to conclude that the ALJ built an accurate and logical bridge from the evidence to his conclusion. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

The ALJ also rejected Dr. Nutenko's opinions because they were based in part on Claimant's subjective complaints. In the context of a mental health assessment, a patient's subjective complaints are relevant and central to a doctor's evaluation. As the Seventh Circuit has stated:

> A psychiatrist does not merely transcribe a patient's subjective statements. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Further, the trained physician, not the

6

> ALJ, is better positioned to discern "true" complaints from exaggerated ones.

*Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); *see Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018) ("By necessity, ... patients' self-reports often form the basis for psychological assessments."). In the Court's view, the ALJ's evaluation of Dr. Nutenko's opinion may have been improperly colored by negative inferences he drew from Claimant's subjective complaints, and Dr. Nutenko's reliance on Claimant's subjective reports in formulating his opinions is not a sufficient basis for the ALJ to reject those opinions without a more fulsome explanation of why he did so.

The ALJ also found that Dr. Nutenko's opinions were unpersuasive because they were inconsistent with Claimant's activities of daily living and the fact that she lived alone. (R.24). Activities of daily living can provide valuable insight into a claimant's functional abilities, but an ALJ must be careful not to go too far and "equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

In the Court's view, that Claimant lives alone and can do some activities of daily living does not necessarily translate into an ability to engage in full-time work. Moreover, there is contrary evidence in the record that the ALJ did not address,

7

including Claimant's testimony she could not sleep, stayed in bed, and did not care about hygiene, and her anxiety attacks caused headaches, stomachaches, and hot flashes. (R.45-46) The Court finds that ALJ's reliance on Claimant's activities of daily living overlooks the critical differences between activities of daily living and activities in a full-time job, and the ALJ must connect the dots better to explain why he concluded that Claimant's minimal activities of daily living supported the finding that Claimant's is able to function in a full-time work environment.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Court agrees with Claimant that the ALJ's evaluation of Dr. Nutenko's opinion is flawed. The Court is not reweighing the evidence, but it simply does not have enough information to conclude that the ALJ's evaluation is supported by substantial evidence. Therefore, remand is required.

Because this case is being remanded, the Court declines to address Claimant's arguments relating to the paragraph B findings, the RFC determination, and subjective symptoms analysis. The Court, however, will address Claimant's constitutional separation of powers argument. Claimant's Brief [ECF No. 13], at 14-15. In *Collins v. Yellen*, 141 S.Ct. 1761, 1789 (2021), the Supreme Court clarified that a party challenging an agency action as violative of the separation of powers must provide a nexus between the limitation on the President's removal power and the

8

harm caused to that party. *See Deborah H. v. Kijakazi*, 2023 WL 2743549, at *12 (S.D. Ill. Mar. 31, 2023). Claimant makes no such showing here, but instead argues the Commissioner's lack of constitutional authority flowed downstream, stripping adjudicatory authority from the Appeals Council and the ALJ. Courts in this district have rejected this argument. *See Deborah H.*, 2023 WL 2743549, at *12 (holding that the claimant's constitutional argument fails to demonstrate any connection between limited removal power and denial of benefits); *Shilo C. v. Kijakazi*, 2023 WL 2745023 at, *10 (N.D. Ill. Mar. 31, 2023) (same) (collecting cases). This Court similarly is not persuaded, and the Court declines to remand on this basis.

Finally, even though the Court declines to address Claimant's remaining arguments, the Court emphasizes that the ALJ should not assume these issues were omitted from the opinion because the ALJ's analysis of these issues was flawless. It is simply unnecessary to address Claimant's remaining arguments to rule on this appeal. On remand, the ALJ should take special care to ensure that the opinion evidence is properly weighed, all of Claimant's symptoms are properly evaluated, and the entirety of Claimant's RFC is properly derived. The Court encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672 (7th Cir. 2009); *Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000).

## CONCLUSION

For the reasons set forth above, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 13] is granted, and the

9

Commissioner's Motion for Summary Judgment [ECF. No 20] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 21, 2024